UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CARLOS TORRES, | ) |
| | ) |
|     Movant, | ) |
| | ) |
| v. | ) |
| | ) Crim. No. 06-71-P-H |
| UNITED STATES OF AMERICA, | ) Civ. No. 09-317-P-H |
| | ) |
|     Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Carlos Torres has filed a 28 U.S.C. § 2255 motion seeking relief from his guilty-plea conviction for a federal drug offense involving crack cocaine which resulted in a 195-month sentence. Torres prosecuted an unsuccessful direct appeal in which he challenged his career-offender status and sought a reduction of his sentence based on the amendments to the crack cocaine sentencing guidelines. See United States v. Torres, 541 F.3d 48 (1st Cir. 2008).[1]

In his present § 2255 quest for relief Torres has narrowed his habeas claims to two substantive grounds in his reply to the United States' motion to dismiss[2]: He asks whether he

---

[1] Torres's petition for certiorari was denied on April 20, 2009. Torres v. United States, 129 S.Ct.1987 (2009) (mem).

[2] In his original § 2255 motion Torres insisted that he was not a career offender because the court improperly used an offense he committed when he was seventeen years old; that he was entitled to a reduction of his sentence below the career offender minimum because of the disparity between crack and powder offenses; that the firearm and burglary offense used in his sentencing calculation were not crimes of violence; that he is factually, actually innocent of his offense of conviction because no law enforcement officer or drug official submitted a police report which stated that Torres had made the June 9, 2004, sale; that his conviction is unconstitutional because the prosecution did not disclose transcripts of calls or inform the defense that they listen to a tape of the calls that would have proven Torres's actual innocence; and that his attorney was constitutionally deficient because Torres had asked for an evidentiary hearing but his attorney did not abide by this request but instead coerced him into pleading guilty to the June 9, 2004, sale, on the grounds that, if he did not, the mother of his kids would receive a five-year sentence and their six kids would be placed in foster care. I construe Torres's reply to the United States' motion to dismiss as withdrawing the claims that he raised in his direct appeal, that pertain to his sentencing, and his prosecutorial misconduct assertion. I do note that at the end of his reply memorandum Torres contends that the First Circuit was wrong to state that this court did not have discretion to sentence him below the career offender guideline but, as a consequence of his unsuccessful appeal of that issue, that horse is dead as the United States points out.

should be deemed factually and actually innocent of the offense of conviction because the police reports conclusively fail to convey that he was arrested for distributing five grams of crack cocaine on June 9, 2004, and he wonders whether he should be deemed factually and actually innocent of aiding and abetting where the indictment fails to explain how Torres assisted in the distribution of crack cocaine vis-à-vis the June 9, 2004, sale. In addition, Torres seeks an evidentiary hearing on his 'factual and actual innocence' claims in view of the fact that his 28 U.S.C. § 2255 motion is a remedy of last resort.

## *Discussion*

"Section 2255 is not a surrogate for a direct appeal." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). Torres's actual innocence claims are the type of claim that should have been raised on direct appeal. See Knight v. United States, 37 F.3d 769, 773 (1994).[3]

**A. Actual Innocence Claims**

The Prosecution Version in Torres's criminal case reads:

> United States Drug Enforcement Administration (DEA) Special Agent (SA) Kate Barnard would testify that she learned that a confidential informant (CI) could purchase crack cocaine from an individual named Carlos Torres. On May 21, 2004, at SA Barnard's instruction, the CI contacted Torres to arrange to purchase $500 worth of crack cocaine. Based on the substance of that call, the agent and CI drove to 29 Highland Avenue in Auburn, Maine, where the CI entered an apartment building alone. While waiting in the vehicle, SA Barnard observed through a window that the CI met with a then-unidentified male who was later identified as Carlos Torres. SA Barnard subsequently observed the CI walking toward her vehicle from the rear of the residence. The CI entered SA Barnard's vehicle and delivered a clear plastic bag that contained 10 tan individually wrapped rocks that appeared to be crack cocaine.
> SA Barnard would further testify that on June 8, 2004, the CI placed a recorded call to the number the CI used previously to reach Torres to purchase crack cocaine. A female subsequently identified as Erica Guess answered the phone. Guess sounded like she recognized the CI's voice when the CI said "it's

---

[3]   There was no plea agreement in this case. (See Rule 11 Tr. at 10.)

>me again." In summary, Guess said they would have some tomorrow and that the CI could come tomorrow.
>
>SA Barnard would also testify that on June 9, 2004, the CI placed another recorded call to the same number and spoke with Torres. Torres sounded as if he knew the CI was planning to come over and told the CI to call back when he was ready. At about 2:30 p.m. the same day, SA Barnard, equipped with an electronic monitoring device, traveled with the CI to 29 Highland Avenue to meet with Torres. Upon their arrival, Guess was already outside the residence with other people. Guess appeared to recognize the CI, approached the passenger side window of the vehicle where the CI was sitting, spoke briefly with the CI, departed and returned shortly thereafter with what appeared to be crack cocaine. Guess handed the CI the crack cocaine, which the CI handed to SA Barnard in exchange for $700 that was given to Guess.
>
>A forensic chemist would testify regarding the bag the CI gave to SA Barnard after meeting with Torres on May 21, 2004, and the bag Guess delivered to the CI on June 9, 2004 after phone negotiations with Torres, concluding that the former contained 3.7 grams of cocaine base and the latter contained 6.4 grams of cocaine base. Guess would testify regarding her relationship with Torres, Torres's distribution of crack cocaine and her assistance to Torres in that business by, for instance, taking calls in Torres's absence and delivering the crack to the CI on June 9, 2004.

(Pros. Version, Crim. No. 06-71-P-H, Doc. No. 30.)  At Torres's change of plea hearing this Court insured that the defense had reviewed the prosecution version (Rule 11. Tr. at 8-9, Crim. No. 06-71-P-H, Doc. No. 43) and Torres told the court that he had read the version of his offense and that there was nothing in it with which he disagreed and the information contained in it was true to his personal knowledge (id. at 9).

The First Circuit addressed a challenge to the voluntariness of a plea in United States v. Marrero-Rivera, explaining:

>At the Rule 11 hearing, the district court appropriately inquired whether Marrero was acting freely and whether anyone had coerced him into pleading guilty. Marrero reassured the district court under oath that he was pleading freely and that no one had attempted to coerce him. [Defense counsel] corroborated these representations. Accordingly, Marrero's sworn responses were reasonably credited by the district court, as "[i]t is the policy of the law to hold litigants to their assurances." [United States v.] Parrilla-Tirado, 22 F.3d [368,] 373 [(1st Cir. 1994)]; see also United States v. Martinez-Molina, 64 F.3d 719, 733 (1st

3

>Cir.1995) (statements at plea hearing "carry a strong presumption of verity" (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

124 F.3d 342, 349 (1st Cir. 1997).

Torres claims in his 28 U.S.C. § 2255 motion that his attorney coerced him into believing that if he didn't plead guilty to the June 9, 2004, sale the mother of his kids would get five years and their six kids would be taken and put in foster care. (Sec. 2255 Mot. at 12.) Even if Torres "upon the advice of counsel …made false statements at the change-of-plea proceedings, the presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) (citations omitted). Although in his initial § 2255 filing Torres blamed counsel for pressuring him into pleading guilty with a conclusory assertion, he has not substantiated his "ineffective assistance of counsel claim with any material issues of fact," and "he has not 'overcome the presumption of regularity which the record ... imports[.]'" Id. (quoting Walker v. Johnston, 312 U.S. 275, 286 (1941)). And, as the United States notes, under Strickland v. Washington, 466 U.S. 668, 687-88 (1984) and Hill v. Lockhart, 474 U.S. 52 (1985), even if counsel advised him that a guilty plea by Torres could forestall the imprisonment of the mother of his children it is well within the range of competent advice. See United States v. Buckley, 847 F.2d 991, 997 (1st Cir. 1988). With respect to prejudice, it is of no small moment that had he not plead guilty he would have most likely lost the benefit of his acceptance of responsibility reduction, risking a guideline range of 262 to 327 rather than 188 to 235.

That said, I briefly review the grounds that Torres asserts entitle him to 28 U.S.C. § 2255 review of his actual innocence claims brought pursuant to Bousley v. United States, 523 U.S. 614 (1998) and Bailey v. United States, 516 U.S. 137 (1995).

1. ***Police Report***

Torres relates that no law enforcement authority in the District of Maine ever arrested or confiscated crack cocaine from his person relating to the June 9, 2004, drug sale. He cites to the police report that he characterizes as not implicating him in this transaction and asserts that law enforcement and prosecution officials colluded to compel Torres into this case concerning the June 9, 2004, sale and coerced him into pleading guilty to an offense of which he is factually and actually innocent.

The "Report of Investigation" that Torres submits with his reply brief provides as relevant to Torres's § 2255 motion:

1. On 6/09/2004, plans were formulated for [the] CS[4] … and SA Kate Barnard, working in an undercover capacity, to purchase crack cocaine from Carlos TORRES and/or TORRES's girlfriend Erica GUESS.
2. On 6/8/2004, the CS place a recorded phone call to 207-[xxx-xxxx] during which the CS spoke with a female, who agents believe to be Erica GUESS, regarding the purchase of crack cocaine the following day. ….
3. On 6/9/2004, the CS placed a recorded phone call to 207-[xxx-xxxx] during which the CS spoke with Carlos TORRES.  In substance, the CS and TORRES spoke about meeting later that day. [The conversation was recorded.]
4. On 6/9/2004, at approximately 2:30pm, agents and the CS met at the predetermined meet location.  The CS was searched with negative results for drugs and/or contraband.  The CS was fitted with an electronic transmitting device, which was monitored and recorded….
5. At approximately 2:45pm, SA Barnard and the CS, in an undercover vehicle, departed from the meet location and traveled to 29 Highland Avenue in Auburn Maine.  Surveillance observed the undercover vehicle park in front of 29 Highland Avenue.
6. At approximately 2:55pm, SA Barnard observed a female with dark hair standing in front of 29 Highland Avenue.  The female was later identified as Erica GUESS.  GUESS

---

[4]  The Prosecution Version uses the initials CI for confidential informant; this report, by using the initials CS, is apparently referring to the individual as a confidential source.

> approached the passenger side window of SA Barnard's vehicle.  The CS and GUESS spoke briefly and then SA Barnard observed GUESS enter the first floor doorway of 29 Highland Avenue and disappear from view.
> 7. ….
> 8. A couple of minutes later, SA Barnard observed GUESS exit from the same door GUESS had previously entered, and then approach the passenger side window of SA Barnard's vehicle. SA Barnard observed GUESS hand the CS a clear plastic baggie which contained what SA Barnard recognized as crack cocaine….The CS immediately handed exhibit 2 to SA Barnard.  SA Barnard then handed GUESS $700 (OAF).  SA Barnard and Erica (GUESS) spoke briefly about SA Barnard contacting GUESS directly in the future. GUESS stated that she would check (with TORRES).  Moments later, the CS and SA Barnard departed the area and traveled to a pre-determined meet location.

(June 10, 2004, Report of Investigation, Civ. No. 09-317-P-H, Doc. No. 15-3.)

As the United States points out, Torres does not explain how the absence of a police report implicating him demonstrates his innocence. (Mot. Dismiss at 13.) Police reports are not some sort of jurisdictional prerequisite to a federal prosecution.  Furthermore, Torres's reading of this report as <u>not</u> implicating him is more than a little distorted.  In fact, if you read his own attachments to his reply memorandum, the overall story is of a law enforcement investigation into Torres's and Guess's joint drug dealing activities, including an initial operation on May 21, 2004, involving a direct purchase from Torres.

2. *Indictment*

With respect to the indictment Torres believes it should have more comprehensively described his involvement, to wit, the method he used to aid and abet himself or another in distributing the crack cocaine.

The indictment reads:

> On about June 9, 2004, in the District of Maine, Defendant Carlos Torres knowingly and intentionally distributed five grams or more of a mixture or substance as listed in Title 21, United States Code, Section 812, and aided and abetted such conduct, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.  It is further alleged that the

6

>  penalty provisions of Title 21, United Sates Code, Section 841(b)(1)(B) apply to
>  the conduct described herein.

(Crim. No. 06-71-P-H, Doc. No. 1.)

At his change of plea hearing, Torres assured the Court that he was pleading guilty to this indictment because he actually committed the crime (Rule 11, Tr. at 4) and the Court verbally reiterated the charge (id. at 5). He did not mount a challenge to the indictment on his direct appeal. More to the point, the indictment in Torres's criminal case is entirely proper.  See United States v. Keene, 341 F.3d 78, 84 (1st Cir. 2003); United States v. Lam Kwong-Wah, 924 F.2d 298, 302 (D.C. Cir. 1991); United States v. Marroquin, 885 F.2d 1240, 1246 (5th Cir. 1989)

### B.  Request for Evidentiary Hearing

"To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." David v. United States, 134 F.3d 470, 478 (1st Cir. 1998).  My discussion of the want of merits of Torres's actual innocence claims answers in the negative the request for an evidentiary hearing.

*Conclusion*

For the reasons stated above, I recommend that the Court deny Torres 28 U.S.C. § 2255 relief.  I further recommend that a certificate of appealability should not issue in the event Torres files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,

7

together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

  Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

         /s/ Margaret J. Kravchuk
         U.S. Magistrate Judge

January 11, 2010.